[No. 7971. Department Two. September 25, 1909.]

SPOKANE CANAL COMPANY, *Appellant*, v. HENRY M. COFFMAN *et al.*, *Respondents.*[1]

VENDOR AND PURCHASER—CONTRACT—CONSTRUCTION — INDEPENDENT COVENANTS—RESCISSION—FORFEITURE. An agreement by the vendor, contained in a contract for the sale of land, to furnish water from its ditches at $1.50 per acre per year, commencing at a time in the future, is an independent covenant, and defaults in payment due on the purchase price entitle the vendor to a rescission, upon the thirty days' notice stipulated for, without a showing that the water had been furnished; especially where the independent nature of the covenants is shown by the fact that the defaults occurred before the time had arrived to furnish water.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered September 22, 1908, dismissing at the close of plaintiff's evidence, an action to rescind contracts for the sale of land, to quiet title and for damages, after a trial before the court without a jury. Reversed.

*Happy & Hindman* and *Gallagher & Thayer*, for appellant.

*John M. Gleeson*, for respondents.

MOUNT, J.—On August 21, 1906, the appellant and respondents entered into two separate written contracts, by

[1]Reported in 103 Pac. 1106.

each of which the appellant agreed to sell, and the respondents agreed to buy, ten acres of land in Spokane county, "together with water for said land in the proportion of one cubic foot of water per second of time for 200 acres of land." The purchase price for each ten-acre tract was $3,000, $20 payable in cash, and $745 on or before September 21, 1906, the balance was to be paid in three equal annual payments, with interest thereafter at the rate of eight per cent. The contract provided that the appellant should furnish the water for irrigating the said lands "between the first day of May and the first day of October of each year from the canal ditches and laterals of the parties of the first part (appellant) beginning with the year 1907." The respondents agreed to pay, in addition to the purchase price of the lands, $1.50 per acre per year for the maintenance of the irrigation works and canals, and to pay all taxes and assessments chargeable against the land. Time was expressly made the essence of the contract, and upon default of any of the payments, appellant, upon thirty days' notice, might cancel the contract. The first payment of $20 was made at the date of the contract upon each thereof, and thereupon respondents took possession of the land. Payments due on August 21, 1906, were not made, but on August 24, 1906, the original contracts were modified in writing so that respondents agreed to pay $20 per month on the first of each month for the first year, and thereafter $25 per month on each contract until the purchase price was fully paid. Respondents thereafter paid $52.50 on the contracts and no more.

On September 1, 1907, when the respondents were a year in default in their payments, they were notified that, unless payments were made as agreed, the contract would be cancelled in accordance with the terms thereof. No payments were subsequently made, and on October 11, 1907, respondents were notified in writing that the contracts were cancelled. Soon thereafter respondents requested permission to remove their crops from the land, and this permission was

granted. Thereafter respondents refused to vacate the premises, and appellant brought this action to rescind the contracts, and for possession of the premises and to remove the cloud of the contract from the title, and for damages and general relief. The complaint set out copies of the contract, and alleged that the appellant "has performed all the terms and conditions of the contract that were to be kept and performed." The answer admitted certain allegations of the complaint and denied others. It specifically denied that the appellant,

"had performed all the terms and conditions of the contract that were by it to be kept and performed, and particularly that portion of said contract found on p. 1, which is as · follows: 'It is further agreed and understood that water for the irrigation of said described land shall be furnished between the first day of May and the first day of October of each year from the canals, ditches, and laterals, to the parties of the first part, beginning with the year 1907.' "

The answer contains some alleged affirmative defenses which are not necessary to be considered. The case came on for trial to the court without a jury. At the conclusion of the plaintiff's evidence, the court made the following order:

"The defendants having moved the court to dismiss said cause on the ground that the plaintiff did not show by its evidence that it had furnished defendants water at the rate of one cubic foot per second of time for 200 acres of land, and the court having heard the argument in the case, it is ordered, adjudged and decreed, that said motion for the reasons stated be and the same is hereby granted, and the plaintiff's cause be dismissed without prejudice to any action at law arising out of or concerning the subject-matter referred to in the complaint in this action."

The court was clearly in error in dismissing the action. As we read the evidence, undisputed as it is, it seems to show that the required amount of water was furnished substantially as agreed upon, but conceding that the evidence does not so show, we are of the opinion that it was not necessary for

the appellant to prove that fact in order to recover, because the agreement to furnish the water from May to October, beginning with the year 1907, was clearly an independent covenant upon which the promise of respondents to pay did not depend.

In *Crampton v. McLaughlin Realty Co.*, 51 Wash. 525, 99 Pac. 586, we held that covenants to put in sidewalks and other improvements contained in a contract for the sale of real estate were independent covenants. The rule in that case is decisive of this. In this case the promise to pay the purchase price of the land did not depend upon the promise to furnish water at stated times. The latter promise is to be performed after the purchase price is fully paid. It was an independent continuing covenant. The fact that the covenant to furnish water was to be performed before all the payments were made was a mere coincidence. The payments were not made dependent thereon. The appellant had delivered possession of the land to the respondents under the contract. The water right followed the land. The delivery of the land to the respondents was a performance of the contract upon the part of the appellant which entitled it to the payments as agreed. The payments agreed upon were long past due, and the contract by its terms was subject to forfeiture before the appellant was required to furnish any water. If the appellant had given notice of the cancellation of the contract before the 1st of May, 1907, as it clearly had a right to do, it could not then have been said that the contract could not be cancelled because no water had been furnished, because the time for furnishing the water had not then arrived. This shows clearly that the time of the payments and the furnishing of water were not dependent upon each other, that they were independent covenants. It was therefore not necessary to allege or prove that the water was furnished. Furthermore, on the 1st of May, 1907, the respondents were eight months in default in their payments, they were therefore in no position to complain if no water

was furnished, because the appellant was not bound to furnish water or to specifically perform the contract while the respondents were in default. The record shows that they are still in default under the contract, and unless a new contract has been entered into extending the time of payment, or waiving the payments past due, appellant is clearly entitled to a judgment of rescission and for possession of the land.

The judgment is reversed and the cause remanded for further proceedings.

RUDKIN, C. J., PARKER, CROW, and DUNBAR, JJ., concur.